Electronically Filed
5/21/2020 12:48 PM
Fourth Judicial District, Elmore County
Shelley Essl, Clerk of the Court
By: Stacy Westbrook, Deputy Clerk

Jason R. N. Monteleone, ISB#: 5441
Shawnee Perdue, ISB#: 8888
JOHNSON & MONTELEONE, L.L.P.
350 North Ninth Street, Suite 500
Boise, Idaho 83702
Telephone: (208) 331-2100
Facsimile: (208) 947-2424
jason@treasurevalleylawyers.com
shawnee@treasurevalleylawyers.com

Attorneys for Plaintiff



## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT FOR THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ELMORE

| | |
|---|---|
| NATALIE ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF MOUNTAIN HOME, MOUNTAIN HOME CITY POLICE, and JOHN/JANE DOES I-V, whose true identities are unknown, <br><br> Defendants. | Case No. CV20-20-00497 <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

COMES NOW, Natalie Rogers, the above-named Plaintiff, and for cause of action against Defendants City of Mountain Home, Mountain Home City Police Department, and John and Jane Does I-V, hereby COMPLAINS AND ALLEGES as follows:

### PARTIES

1. Plaintiff Natalie Rogers (hereinafter "Rogers") at all times herein mentioned has been, and presently is, a resident of Elmore County, Idaho.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

Cawthon (District), James S.



2. Defendants City of Mountain Home ("Mountain Home") at all times herein mentioned has been, and presently is, a political subdivisions of the State of Idaho.

3. Defendants Mountain Home City Police Department ("MHCPD") at all times herein mentioned has been, and presently is, a political subdivisions of the State of Idaho.

## JURISDICTION AND VENUE

3. Jurisdiction is appropriate pursuant to Idaho Code § 1-705.

4. Venue is proper, pursuant to Idaho Code § 5-404, because this cause of action arose within Elmore County and the principal place of business for the Defendant is located within Elmore County.

## GENERAL ALLEGATIONS

5. Ms. Rogers began her employment with the City of Mountain Home in 2004. She transferred to MHCPD in 2006 as a police officer.

6. Ms. Rogers was an exemplary employee earning good performance reviews during her employment with MHCPD.

7. Ms. Rogers was a detective/ school resource officer from 2009 until June 2018. In June of 2018 per MHCPD policy, Ms. Rogers was set to make a lateral transfer back to patrol.

8. On or about January 2015, Ms. Rogers began experiencing symptoms of vertigo, right eye pain, and mild visual disturbances. On February 26, 2015, Ms. Rogers experienced the onset of full vertigo symptoms and increased symptoms in her right eye.

9. Ms. Rogers began FMLA on February 26, 2015 and returned to work on March 13, 2015. Chief Schilz, provided accommodations to Ms. Rogers allowing her to

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

refrain from driving at night, and respond to cases at night with another detective as needed. Within the year Ms. Rogers' vision symptoms subsided. Modifications continued to be available as needed if another flair up occurred.

10. In September of 2017, Ms. Rogers began again experiencing mild neurological symptoms such as occasional brain fog, left arm weakness, numbing sensation in right leg, hand weakness, and spasticity. The symptoms fluctuated with intensity, but did not interfere with Ms. Rogers ability to perform her job. Ms. Rogers continued keeping Chief Schilz and command staff up to date of her symptoms and suspected underlying diagnosis was Multiple Sclerosis.

11. By the winter of 2017, the essential tremors in Ms. Rogers' right hand increased along with diminished fine motor skills in the right hand. Ms. Rogers requested permission to complete her police reports via voice to text dictation. Administrative supervisor Judy Gossett, Lieutenant Harmon, and Chief Schilz approved this request. Most police officers at MHCPD complete their police reports through voice dictation that are typed out by administrative assistants.

12. In February of 2018, Officer Nelson made Ms. Rogers aware that several patrol officers actively spreading rumors that Ms. Rogers was making up her medical condition in order to stay on as a school resource officer. This was one of many documented incidents of harassment Ms. Rogers endured by fellow officers. These rumors persisted until the time of her termination.

13. By April 2018, Ms. Rogers' symptoms progressed which required follow up doctor appointments with several test conducted in April and May. Ms. Rogers stayed in contact and updated Chief Schilz and Lieutenant Harmon on her neurological symptoms

and doctor appointments.

14. At the end May 2018, Ms. Rogers' position as a school resource officer/detective was expiring with the next patrol rotation that was scheduled to take place towards the end of June 2018. Ms. Rogers continued preforming investigation duties as a detective.

15. On June 5, 2018, Ms. Rogers provided Chief Schilz a letter from her medical provider, Jenna Rovig, NP, alerting MHCPD that she was suffering from an unknown neurological condition and that she would be undergoing an extensive specialty evaluation within the month. Ms. Rovig recommended that Ms. Rogers be placed on full-time modified duty and the restrictions included an inability to use a firearm and potential upper body weakness that could result in inability to physically detain a suspect or protect herself.

16. After the requested modifications were submitted to Chief Schilz, Ms. Rogers remained working in the police station, her job duties remained the same as they were since May, and she was not required to wear a fire arm or physically detain suspects. Ms. Rogers' position complied with the modifications recommended by her medical provider.

17. On June 14, 2018, Ms. Rogers' title was officially changed from School Resource Officer/Detective to Patrol officer, but her job duties and supervisors remained the same from May of 2018.

18. On July 20, 2018, Chief Schilz retired.

19. On July 23, 2018, Mayor Sykes and Nina Patterson began reviewing personnel files in Chief Schilz office. Ms. Rogers was warned by Lieutenant Harmon to

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

make sure to document all of her activities because Mayor Sykes and Ms. Patterson were targeting Ms. Rogers.

20. On July 25, 2018, Mayor Sykes appointed Sergeant Griggs as Interim Chief and Executive Assistant, Amy Pearson as "Fill-In Chief."

21. On July 31, 2018 or August 1, 2018, Ms. Rogers was advised by Lieutenant Fuentes that Mayor Sykes and Ms. Patterson were up at the Police department again inquiring about Ms. Rogers' job duties and work performance. Lieutenant Fuentes expressed the same concern as Lieutenant Harmon regarding Mayor Sykes and Ms. Patterson targeting Ms. Rogers.

22. On August 30, 2018, Ms. Pearson met with Ms. Rogers' advising her that City Hall was questioning Ms. Rogers job duties once again. Ms. Pearson sat down with Ms. Rogers and Lieutenant Cobos to officially document and outline Ms. Rogers' job duties. Ms. Rogers was then placed under Lieutenant Cobos's command.

23. From the time Ms. Rogers' began working the modified patrol assignment, she successfully completed her job duties with no complaints about her work performance, her work attendance, or concerns from her supervisors.

24. On September 6, 2018, despite Ms. Rogers' success in her position, Interim Chief Griggs informed Ms. Rogers he was instructed by human resources to offer her the administrative assistant position. Ms. Rogers informed Interim Chief Griggs that the administrative assistant position would set her up for failure as hand weakness prevented her from typing. Ms. Rogers expressed concern that she believed the administrative assistant position would be a demotion after being a successful police officer for years. Mountain Home and MHCPD did not provide clarifications regarding Ms. Rogers'

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

concerns involving the administrative position offered.

25. On September 12, 2018, Ms. Rogers submitted an updated letter from her medical provider requesting she remain on modified fulltime work in the same position she currently held. Interim Chief Griggs submitted the letter to Ms. Patterson, where she immediately implied it was not accepted.

26. On September 14, Interim Chief Griggs and Ms. Rogers met Ms. Patterson at City hall where Ms. Rogers was informed her request to continue modifications was denied and she was immediately placed on FMLA. Ms. Rogers was willing and able to continue working in her current position when she was forcefully placed on FMLA.

27. Mayor Sykes and Ms. Patterson did not speak with any of Ms. Rogers supervisors about their decision to place Ms. Rogers on leave, deny her requested accommodation, or involve them in offering her the administrative assistant position. Ms. Rogers' supervisors were totally unaware of the Mayor Sykes' and Ms. Patterson's decision

28. On November 15, 2018 and January 3, 2019, Ms. Rogers, through her physician, submitted additional documentation regarding her medical condition and requested accommodations that she remain in the position she held since May of 2018.

29. On January 7, 2019, Ms. Rogers was notified in writing that her employment had been terminated as a result of her medical condition.

## COUNT ONE

*Disability Discrimination in Violation of Idaho Human Rights Act and the Americans with Disabilities Act*

30. Ms. Rogers hereby realleges the allegations contained in paragraphs 1 through 27 as set forth above and incorporates the same herein by reference.

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

31. At all relevant times Ms. Rogers was a qualified individual within the meaning of the Americans with Disabilities Act.

32. Mountain Home and MHCPD intentionally and with deliberate indifference failed to engage with Ms. Rogers in an interactive process to determine whether her disability could be reasonably accommodated prior to terminating Ms. Rogers' employment. Defendants' decision to terminate Ms. Rogers's employment was based on her disability.

33. Defendants intentionally and with deliberate indifference retaliated against Ms. Rogers for seeking reasonable accommodations in violation of the Americans with Disabilities Act.

34. The actions of Defendants in intentionally and with deliberate indifference failing to engage with Ms. Rogers in an interactive process to determine whether her disability could be reasonably accommodated, retaliating against Ms. Rogers, and terminating Ms. Rogers's employment because of her disability is in violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the Americans with Disabilities Act, which prohibits discrimination based on disability.

35. As a result of Defendant's violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the Americans with Disabilities Act, Ms. Rogers is entitled to compensatory damages including, but not limited to, damages for pain, suffering, emotional distress, lost wages and lost benefits in an amount to be determined with specificity at trial.

36. Ms. Rogers is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to 42 U.S.C § 12117(a), Idaho Code § 12-121, I.R.C.P. 54,

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

and any other applicable provisions of federal or Idaho law.

37. Ms. Rogers hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment, Order and Decree of this Court as follows:

1. For judgment of the court awarding Plaintiff damages in excess of $10,000.00, for both economic and non-economic damages, incurred as a result of Defendant's termination of Plaintiff in violation of the Idaho Human Rights Act, the Americans with Disabilities Act, and the Family Medical Leave Act.

2. For prejudgment interest on all damages recovered at the rate set forth within Idaho Code § 28-22-104.

3. For Plaintiff's reasonable attorney fees and costs incurred in prosecuting this action; and

4. For such other and further relief as court deems just and necessary.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Idaho Rule of Civil Procedure 38(b).